# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Judy Larson, Janelle Mausolf, and Karen Reese, individually and on behalf of themselves and all others similarly situated, | Case No. 17-cv-03835 (SRN/SER) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Allina Health System; the Allina Health System Board of Directors; the Allina Health System Retirement Committee; the Allina Health System Chief Administrative Officer; the Allina Health System Chief Human Resources Officer; Clay Ahrens; John I. Allen; Jennifer Alstad; Gary Bhojwani; Barbara Butts-Williams; John R. Church; Laura Gillund; Joseph Goswitz; Greg Heinemann; David Kuplic; Hugh T. Nierengarten; Sahra Noor; Brian Rosenberg; Debbra L. Schoneman; Thomas S. Schreier, Jr.; Abir Sen; Sally J. Smith; Darrell Tukua; Penny Wheeler; Duncan Gallagher; Christine Webster Moore; Kristyn Mullin; Steve Wallner; John T. Knight; and John Does 1–20, | |
| Defendants. | |

Edward W. Cioklo, Mark K. Gyandoh, and Julie Siebert-Johnson, Kessler, Topaz, Meltzer & Check, LLP, 280 King of Prussia Road, Radnor, Pennsylvania, 19807, Carl F. Engstrom, Kai H. Richter, and Brock K. Specht, Nichols Kaster PLLP, 80 South Eighth Street, Suite 4600, Minneapolis, Minnesota, 55402, and Robert A. Izzard, Jr., Martin Patrick Kindall, and Douglas Patrick Needham, Izard, Kindall & Raabe, LLP, 29 South Main Street, Suite 305, West Hartford, Connecticut, 06107, for Plaintiff Judy Larson, Janelle Mausolf, and Karen Reese, individually and on behalf of themselves and all others similarly situated.

Nicholas J. Bullard, Andrew J. Holly, and Stephen P. Lucke, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota, 55402, and Paul J. Ondrasik, Jr., Eric G. Serron, and Osvaldo Vazquez, Steptoe & Johnson LLP, 1330 Connecticut Avenue, Northwest, Washington, District of Columbia, 20036, for Defendants Allina Health System, Allina Health System Board of Directors, Allina Health System Retirement Committee, Allina Health System Chief Administrative Officer, Allina Health System Chief Human Resources Officer, Clay Ahrens, John I. Allen, Jennifer Alstad, Gary Bhojwani, Barbara Butts-Williams, John R. Church, Laura Gillund, Joseph Goswitz, Greg Heinemann, David Kuplic, High T. Nierengarten, Sasha Noor, Brian Rosenberg, Debbra L. Schoneman, Thomas S. Schreier, Jr., Abir Sen, Sally J. Smith, Darrell Tukua, Penny Wheeler, Duncan Gallagher, Christine Webster Moore, Kristyn Mullin, Steve Wallner, John T. Knight, and John Does 1–20.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter comes before the Court on Allina Health System, Allina Health System Board of Directors, Allina Health System Retirement Committee, Allina Health System Chief Administrative Officer, Allina Health System Chief Human Resources Officer, Clay Ahrens, John I. Allen, Jennifer Alstad, Gary Bhojwani, Barbara Butts-Williams, John R. Church, Laura Gillund, Joseph Goswitz, Greg Heinemann, David Kuplic, Hugh T. Nierengarten, Sahra Noor, Brian Rosenberg, Debbra L. Schoneman, Thomas S. Schreier, Jr., Abir Sen, Sally J. Smith, Darrell Tukua, Penny Wheeler, Duncan Gallagher, Christine Webster Moore, Kristyn Mullin, Steve Wallner, John T. Knight, and John Does 1–20's (collectively "Defendants'") Motion to Dismiss the Complaint ("Motion to Dismiss") [Doc. No. 28] for lack of subject-matter jurisdiction and for failure to state a claim. For the reasons stated below, the Court will partially grant and partially deny the motion.

## II.     BACKGROUND

### A.     Factual History

Defendant Allina Health System ("Allina") is a health care system that provides medical care throughout Minnesota and western Wisconsin. (Compl. ¶ 21.) Qualifying Allina employees were covered by the Allina retirement plan. Allina previously offered a 403(b) Plan to its employees. (*Id.* ¶ 84.) However, in October 2010, new participant entry into the 403(b) Plan was frozen, and by January 1, 2011, all employee salary deferrals, employer matching contributions, and discretionary employer contributions were frozen. (*Id.* ¶ 84.) In conjunction with freezing the 403(b) Plan, effective January 1, 2012, all eligible Allina employees became participants in the 401(k) Plan. (*Id.*) Since that time, all deferral elections and employer contributions have been received within the 401(k) Plan. (*Id.* ¶ 88.)

Both the 403(b) and 401(k) Plans are "defined contribution plans" or "individual account" plans within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). (*Id.* ¶ 4.) Therefore, each Plan contains individual accounts for every participant and for benefits based solely upon the amount contributed to those accounts. (*Id.* ¶ 83.) The retirement benefits each Plan provides are based solely on the amounts allocated to an individual's account. (*Id.*)

Allina is the named fiduciary of the Plan. (*Id.* ¶ 22.) Allina acted through the Board of Directors ("Director Defendants"), the Chief Administrative Officer ("CAO Defendants"), the Chief Human Resources Officer ("HR Defendants"), the Plan Administrators ("Plan Administrator Defendants"), and Retirement Committee

("Retirement Committee Defendants"), to perform Plan-related fiduciary functions in the course and scope of their employment. (*Id.* ¶ 23.) Director Defendants are in charge of selecting Retirement Committee Defendants. (*Id.* ¶ 27.) Retirement Committee Defendants are tasked with selecting the Plan's core investment options. (*Id.* ¶ 48.) Plan Administrator Defendants are responsible for determining benefits eligibility and construing Plan documents. (*Id.* ¶ 58.)

The Plan currently offers three groups of investment options. First, the ProManage program automatically allocates enrolled participant's contributions to eleven set investment options. (*Id.* ¶ 100.). ProManage, LLC, headquartered in Chicago, Illinois, is the firm appointed by Allina to provide investment management services "with respect to assets held in the individual Plan accounts of Participants who do not elect to opt out of the ProManage Service." (*Id.* ¶ 94.). Second, the core options program allows enrolled participants to pick where they would like to invest their contributions from a list of thirteen investment options. (*Id.* ¶ 126.). Lastly, the mutual fund window allows enrolled participants to choose where to invest their contributions from a list of approximately three hundred mutual funds. (*Id.* ¶¶ 12, 130.)

Fidelity Management Trust Company ("Fidelity") is the custodian of the 403(b) Plan and trustee of the 401(k) Plan. (*Id.* ¶ 90.) Fidelity also provides recordkeeping, and management services to the Plans. (*Id.*) Under both of the Plans' terms, Plan administration and reasonable expenses are to be paid from the Plan assets. (*Id.* ¶ 157.)

## B.    Procedural History

Plaintiffs are three former employees and participants of the Plan who seek to represent a class of all participants in and beneficiaries of the Plan from the 403(b) Plan's inception in 2011 through to the 401(k) Plan today. (*Id.* ¶¶16, 17, 18.) Plaintiffs' action is brought on behalf of themselves and all persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the 403(b) Plan and/or the 401(k) Plan, at any time between August 18, 2011 and the present. (*Id.* ¶ 76.)

Defendants move to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) arguing that the Court lacks subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) arguing that Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

## III.   DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 9. To meet this standard and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). The plausibility

standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (citation omitted). It is not, however, a "probability requirement." *Id.* (citation omitted). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). Several principles guide courts in determining whether a complaint meets this standard. First, the court must take the plaintiff's factual allegations as true and grant all reasonable inferences in favor of the plaintiff. *Crooks v. Lynch,* 557 F.3d 846, 848 (8th Cir. 2009). This tenet does not apply, however, to legal conclusions or "formulaic recitation of the elements of a cause of action;" such allegations may properly be set aside. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim. *Id.* (quoting *Twombly,* 550 U.S. at 557.) Finally, the complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

Evaluation of the sufficiency of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Id.* (quoting *Iqbal,* 556 U.S. at 679). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous MediaCorp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## B. ERISA

The federal Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), regulates plans providing employees with fringe benefits. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw*, 463 U.S. at 90. Courts must be "attendant to ERISA's remedial purpose and evident intent to prevent through private civil litigation 'misuse and mismanagement of plan assets.'" *Braden*, 588 F.3d at 597 (quoting *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 137, 140 n.8, 142 n.9 (1985)). "Congress enacted ERISA to regulate comprehensively certain employee benefit plans and 'to protect the interest of participants in these plans by establishing standards of conduct, responsibility, and obligations for fiduciaries.'" *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 906–07 (8th Cir. 2005) (citations omitted).

"ERISA represents a 'careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.'" *Tussey v. ABB, Inc.*, 746 F.3d 327, 334 (8th Cir. 2014) (quoting *Aetna Health Inc. v. Davila,* 542 U.S. 200, 215 (2004)). "These responsibilities imposed by ERISA have the familiar ring of their source in the common law of trusts[,]" *Pegram v. Hedrich*,

530 U.S. 211, 224 (2000), and courts accordingly look to the law of trusts "[i]n determining the contours of an ERISA fiduciary's duty." *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1828 (2015).

Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties—duties which have been described as "the highest known to the law." *Braden*, 588 F.3d at 598 (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 272 n.8 (2d Cir. 1982)). In giving effect to this intent, the Eighth Circuit has stated that courts "must be cognizant of the practical context of ERISA litigation." *Id.* ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. *Id.* Thus, "while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information." *Id.*

"If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." *Id.* Thus, it is "sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled 'give the defendant fair notice of what the claim is and the grounds upon which it rests,' and 'allow the court to draw the reasonable inference' that the plaintiff is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678). These considerations counsel a careful evaluation of an ERISA complaint's factual allegations before determining whether they support a plausible inference that the plaintiff is entitled to relief.

### C. Standing

"[S]tanding is to be determined as of the commencement of the suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992). The burden of establishing the elements of standing is on the party invoking federal jurisdiction. *See Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 82 (8th Cir. 1996). Where, as here, Defendants challenge the existence of jurisdiction on the face of the pleadings, and not through extrinsic evidence, the reviewing court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2012).

The doctrine of standing limits the courts' jurisdiction to "those disputes which are appropriately resolved through the judicial process." *Lujan*, 504 U.S. at 560. To have standing under Article III of the Constitution, a plaintiff must demonstrate the existence of an actual case or controversy by showing (1) a concrete injury in fact, (2) that is fairly traceable to the challenged action, and (3) that is likely to be redressed by the relief sought. *Id.* at 560–61.

The party invoking standing must demonstrate an injury in fact of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Republican Party of Minn. v. Klobuchar,* 381 F.3d 785, 791–92 (8th Cir. 2004). "[S]tanding is to be determined as of the commencement of the suit." *Id.* at 570 n.5. The burden of establishing the elements of standing is on the party invoking federal jurisdiction. *See Devine*, 100 F.3d at 82 (8th Cir. 1996).

A class representative must have standing to assert claims on his or her own behalf in order to have standing to assert claims as a class representative. A district court may not certify a class "if it contains members who lack standing." *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1034 (8th Cir. 2010); *see, e.g.*, *In re Milk Products Antitrust Litigation,* 195 F.3d 430, 436 (8th Cir. 1999) (because the plaintiff's individual claim was properly dismissed for lack of standing, the plaintiff was not a member of the class and could not represent the class); *Sabers v. Delano,* 100 F.3d 82, 84 (8th Cir. 1996) (absent standing to bring a § 1983 claim in her own right, federal prisoner was not eligible to represent a class of persons raising the same claim).

In ERISA cases, a plaintiff with Article III standing may proceed under 29 U.S.C. § 1132(a)(2) on behalf of the plan or other participants. *See, e.g.*, *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir. 1998) ("[T]he standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the [fiduciary's] challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved."). "Thus, a plaintiff may seek relief under § 1132(a)(2) that sweeps beyond his own injury." *Braden*, 588 F.3d at 593.

Defendants argue that Plaintiffs have not pled and cannot demonstrate the requisite injury-in-fact as a result of the alleged breaches of loyalty and prudence arising from the mutual fund window. (Defs.' Mem. in Supp. of Mot. to Dismiss [Doc. No. 30] ("Defs.' Mem.") at 26.). Because Plaintiffs only invested in the core options, and not in the mutual fund window, Defendants argue Plaintiffs have failed to establish standing to

bring their claims. (*Id.*) Defendants primarily rely on *Brown v. Medtronic*, 628 F.3d 451

(8th Cir. 2010). In that case, a participant in an employee stock ownership plan owned

shares at the beginning of the proposed class period. *Id.* at 454. But the participant sold

his shares before negative disclosures about the company were made public and the price

of the stock decreased. *Id.* As such, the court held that he had suffered no injury and thus

lacked constitutional standing to pursue an ERISA breach of fiduciary duty claim. *Id.* at

457.

However, in this case, unlike in *Brown*, Plaintiffs claim to have suffered an injury.

Here, Plaintiffs claim that they were injured by Defendants' investment choices related to

the core options program including Fidelity's inclusion of its own funds into the Plan, the

inclusion and subsequent failure of Defendants to remove high-cost investment options

from the Plan, Defendants' failure to monitor recordkeeping costs, and Defendants'

failure to negotiate lower fees for the Plan. (Compl. ¶8.) As such, Plaintiffs have

constitutional standing under Article III to bring a claim against Defendants.

Moreover, the fact that the representative Plaintiffs in this case did not invest in

the ProManage option or the mutual fund window, does not prevent them from bringing a

claim on behalf of the whole plan. In *Braden*, the court found that the plaintiff had

constitutional standing to bring his claim on behalf of participants in the entire plan for

the whole period embraced by his complaint, even though it predated the plaintiff's

participation, because a suit brought under § 1132(a)(2) is "brought in a representative

capacity on behalf of the plan as a whole." 588 F.3d at 593. Moreover, in *Krueger v.*

*Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014), even though the

representative plaintiffs did not invest in the same option, the plaintiffs were allowed to bring an action on behalf of the entire plan because "*[d]efendants' decisions* . . . to invest in or retain certain funds for *the [p]lan* [was] the same for each putative class member."

Like the plaintiffs in *Braden* and *Krueger*, Plaintiffs here also have standing to bring a claim against the entire plan because there is "clearly a common question of both fact and law. . . ." *Id.* at 570. Therefore, because Plaintiffs have standing to bring a claim, § 1132(a)(2) allows them to seek relief for the entirety of both Plans. *McDonald v. Jones*, No. 4:16 CV 1346 RWS, 2017 WL 372101, at *2 (E.D. Mo. Jan. 26, 2017) ("[A] plan participant may seek recovery for the plan even where the participant did not personally invest in every one of the funds that caused an injury to the plan."); *Tussey v. ABB, Inc.*, No. 06–04305–CV–NKL, 2007 WL 4289694, at *6 (W.D. Mo. Dec. 3, 2007) (Even though the individual plan participants had chosen different investment options within the plan, "because these issues involve the acts or omission of [the defendants], they are common to all [p]lan participants."); *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) ("Plaintiff has established constitutional standing with respect to the 257 funds that it did not purchase."); *Walsh v. Marsh & McLennan Cos., Inc.*, No. CIV. JFM-04-0888, 2006 WL 734899, at *1 (D. Md. Feb. 27, 2006) ([I]t does not matter, at least for the purpose of constitutional standing, that [the plaintiff] was not invested in [every fund offered].").

### D.    Count I: Breach of Fiduciary Duties of Prudence and Loyalty

Count I alleges that Defendants breached their fiduciary duties of prudence and loyalty imposed upon them by 29 U.S.C. § 1104. ERISA plaintiffs bear the burden of

proving a breach of fiduciary duty. *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992). A breach of fiduciary duty claim involves a three-step analysis. *Id.* In order to state a claim for breach of fiduciary duty, a plaintiff must make a prima facie showing that (1) the defendant acted as a fiduciary, (2) the defendant breached its fiduciary duties, and (3) the defendant's breach caused a loss to the plan. *Pegram*, 530 U.S. at 225–26. Even when the complaint does not allege facts showing specifically how the fiduciaries breached their duty through improper decision-making, a claim can survive a motion to dismiss if the court may reasonably infer that the fiduciaries engaged in a flawed decision-making process. *Braden*, 588 F.3d at 595–96. Once the plaintiff has satisfied these burdens, "the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by . . . the breach of duty." *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994). Only the issue of breach is disputed here.

ERISA § 404, 29 U.S.C. § 1104, establishes the fiduciary duties owed by a plan fiduciary: "(a)(1) . . . [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and— (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan . . . ." Subsection

(a)(1)(A) codifies the duty of loyalty and subsection (a)(1)(B) articulates the duty of prudence.

### 1.    Breach of Fiduciary Duty of Prudence

The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The statute's prudent person standard is an objective standard that focuses on a fiduciary's conduct before the challenged decision. *Roth*, 16 F.3d at 917. "Good faith is not a defense to a claim of imprudence." *In re Dynegy, Inc. Erisa Litig.*, 309 F. Supp. 2d 861, 875 (S.D. Tex. 2004) (citation omitted).

In evaluating whether a fiduciary has acted prudently, the court focuses on a defendant's decision-making process rather than the results of those decisions. *Id.* at 917–18; *Schaefer v. Ark. Med. Soc'y,* 853 F.2d 1487, 1491 (8th Cir. 1988) (fiduciaries must "investigate all decisions that will affect the pension plan"). When determining whether a fiduciary has acted with prudence, the court looks at "the totality of the circumstances," including but not limited to, the plan structure and aims and the disclosures made to participants regarding the risks associated with the investments. *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007); *see also* 29 C.F.R. § 2250.404a–1(b)(1)(i) (A fiduciary acts prudently when it gives "appropriate consideration to those facts and circumstances that . . . the fiduciary knows or should know are relevant to the . . . investment course of action involved."). The Supreme Court has rejected presumptions of

prudence in the ERISA pleading context, advocating instead for "careful, context-sensitive scrutiny of a complaint's allegations" as a means to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470 (2014).

### a.  ProManage

Plaintiffs allege that Defendants breached their fiduciary duty of prudence in three ways—(1) by automatically enrolling participants of the Plan in a ProManage option, (2) by offering participants in the Plan the ProManage option, a managed account; and (3) by charging participants an unreasonable yearly fee to participate in the ProManage option. (Compl. ¶¶ 100, 102, 104.) The ProManage option, Plaintiffs claim, allocates a participant's contributions to eleven set investments according to an investment mix in the Trust. (*Id.*) It does this by considering the participant's account balance, projected Social Security income, and age in allocating assets to a pre-set menu. (*Id.*) As payment, ProManage charges participants a yearly fee of up to 0.35% of their invested assets in the Plans, with an average fee of .701% (*Id.* ¶ 102.) Plaintiffs contend that the ProManage option had "little to no benefit despite the fees it charged participants." (Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss [Doc. No. 43] ("Pls.' Mem.") at 20.)

Defendants respond that their decision to offer and retain ProManage did not breach a fiduciary duty. They argue that Department of Labor regulations "make clear that such decisions cannot be challenged on fiduciary breach grounds." (Defs.' Mem. at 14.) Moreover, they contend that the Plaintiffs' challenge to the selection and retention of the ProManage option also fails to state a plausible claim. (Defs.' Reply in Supp. of Mot.

to Dismiss [Doc. No. 45] ("Defs.' Reply") at 5.) Defendants assert that the average fee for ProManage of .701% was not unreasonable and that Plaintiffs failed to provide any comparison to show that the service was inferior to others available on the market. (*Id.* at 2.)

First, qualified default investment alternatives ("QDIAs") are a legal form of enrollment plan under ERISA. Department of Labor, *Fact Sheet: Default Investment Alternatives Under Participant-Direct Individual Account Plans*, UNITED STATES DEPARTMENT OF LABOR (September 2006), https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/default-investment-alternatives-under-participant-directed-individual-account-plans. QDIAs allow plan fiduciaries, in the absence of investment direction from the participant, to automatically invest their assets. *Id.* So, Plaintiffs have failed to state a claim that any type of automatic enrollment program by Defendants breached their fiduciary duty.

Second, Plaintiffs acknowledge that Defendants do have the ability to select the type of QDIA for participants' investments. (Pls.' Mem. at 19.) According to the Department of Labor's guidance in 29 C.F.R. § 2550.404c-5(b)(2), "the rule does not require a plan fiduciary to undertake an evaluation as to which of the [QDIAs] provided for in the regulation is the most prudent for a participant or the plan." Final Rule, 72 Fed. Reg. 60452, 60453 (Oct. 24, 2007). Thus, Plaintiffs have not adequately pled that Defendants breached their fiduciary duty by presenting Plaintiffs with the ProManage option, a managed account.

Finally, once a QDIA is selected, for plaintiffs to show that a prudent fiduciary would have, at the time of selection, chosen a different fund, they "must provide a sound basis for comparison—a meaningful benchmark." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Plaintiffs neither have pled what would have been reasonable nor do they cite a comparison fund to show that ProManage supplied an inferior service. Therefore, under Rule 12(b)(6), Plaintiffs' allegations of breach of fiduciary duty fail as to ProManage. This portion of Defendants' Motion to Dismiss is granted.

### b. Core Options

Plaintiffs claim that Defendants breached their fiduciary duty of prudence by placing mutual funds within the core options instead of collective trusts or separate accounts. (Compl. ¶ 120.) In support, Plaintiffs argue that collective trusts and separate accounts provide lower fee alternatives to mutual funds. (*Id.* ¶ 117.) They assert that a collective trust is "simply the same fund" as a mutual fund "except it costs less" and that separate accounts expenses are "one-fourth" the cost of a mutual fund. (*Id.* ¶ 174; May 16, 2018 Hr'g Tr. at 33.). Plaintiffs contend that the failure to "adequately investigate non-mutual fund alternatives such as collective trusts and separately managed accounts" is a breach of fiduciary duty. (Pls.' Mem. at 18.)

Defendants respond that Plaintiffs fail to state a claim under Rule 12(b)(6) when they allege that Defendants' decision to place mutual funds within the core options and mutual fund window, instead of a collective trust or separate account, was a breach of fiduciary duty. (Defs.' Mem. at 13.) Defendants assert that mutual funds offer greater

transparency than collective trusts and separate accounts. (*Id.* at 14.) Moreover, they claim that mutual funds have "important regulatory safeguards, including diversification requirements, limitations on leverage, and mandatory oversight by a largely independent board of directors." (*Id.*) Hence, it is a judgment call, like so many other judgment calls they must make and, without more, is not a breach per se.

In *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016), the court held that plaintiffs failed to state a claim under Rule 12(b)(6) for breach of a fiduciary duty where a plan's fiduciaries failed to provide lower-cost collective trusts or separate accounts instead of mutual funds. The court found that it was "inappropriate to compare distinct investment vehicles solely by cost, since their essential features differ so significantly." *Id.* The court noted that mutual funds have a different set of regulatory and transparency features than collective trusts and separate accounts. *Id.* The court explained that trying to compare them was like trying to compare "apples-to-oranges. *Id.*

Plaintiffs' attempt to distinguish *White* is unavailing. (Pls.' Mem. at 18 n.21.) Plaintiffs claim that *White* merely stands for the proposition that "fiduciaries are not generally required to offer separate accounts or collective trusts" and that it does not consider the situation here, where they allege that Defendants breached their fiduciary duty because "identical versions of the Plans' Fidelity affiliated investment options were available in lower-cost investment vehicles." (*Id.*) However, the plaintiffs in *White* did allege that "defendants provided participants with an S&P 500® index investment in a Vanguard mutual fund even though they could have opted for the same investment in a

lower-cost Vanguard collective trust." *White*, 2016 WL 4502808, at *9. And, despite that allegation, the court in *White* still determined that the plaintiffs had failed to state a claim upon which relief could be granted. *Id.* at *12.

The only case that Plaintiffs rely on to support their argument that Defendants' failure to explore collective trusts and separate accounts in lieu of mutual funds states a claim for the breach of a fiduciary duty is *Moreno v. Deustche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2016 WL 5957307, at *2 (S.D.N.Y. Oct. 13, 2016). In *Moreno*, the court made no such holding. The court merely mentioned collective trusts and separate accounts as part of its recitation of the facts and allegations in the plaintiff's complaint. [1] *Id.* At no point in its analysis did the court find that such a failure to investigate various different investment vehicle alternatives stated a claim under Rule 12(b)(6). *Id.*

Importantly, in fact, in *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057 (N.D. Cal. 2017), the plaintiff alleged that the placement of collective trusts and separately managed accounts was a per se ERISA violation because they were not subject to prospectus and SEC registration requirements and they were "inferior to mutual funds and therefore imprudent." *Id.* at 1075. The court found the plaintiff had failed to state a claim under Rule 12(b)(6) because neither the decision to include nor exclude collective trusts and separate accounts alone warranted a finding of breach of fiduciary duty. *Id.*

---

[1] To the extent that *In re MT&T Bank Corporation ERISA Litig.*, No. 16-cv-003750FPG (W.D.N.Y. September 11, 2018), suggests *Moreno* held to the contrary, this Court respectfully disagrees.

Finally, Allina's 403(b) Plan is actually prohibited by law from offering such investments, which Plaintiffs concede. 26 U.S.C. §§ 403(b)(1), (b)(7); (Pls.' Mem. at 19 n.22.) Therefore, the Court finds that Plaintiffs have failed to state a claim under Rule 12(b)(6) that Defendants breached their fiduciary duty solely by failing to offer either a collective trust or a separate account instead of, or in addition to, the mutual funds within either Plan. This portion of Defendants' Motion to Dismiss is granted.

### c.    Core Options and the Mutual Fund Window

Plaintiffs allege that Defendants breached their fiduciary duty of prudence in managing the core options and mutual fund window by: (1) improperly selecting and monitoring the investment options and (2) failing to monitor recordkeeping fees or solicit bids from other recordkeeping services.

### i.    Selection and Monitoring

Plaintiffs allege that the Defendants breached their fiduciary duty of prudence because they allowed Fidelity to place its own funds in the core options and mutual fund window and because they failed to adequately monitor Fidelity's selection of funds and failure to remove high-cost investment options.

### A.    Fidelity's Inclusion of Its Own Funds

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by permitting Fidelity to include its own funds within the core options and mutual fund window. Plaintiffs argue that there is an "inherent conflict of interest" that arises when plan administrators and other fiduciaries allow a service provider's proprietary fund to be used as an investment option. (Compl. ¶ 121.) They argue that this results in funds being

chosen that are "not the most prudent investment option and can cause those funds to remain investment options despite poor performance or higher fees than other market alternatives." (*Id.*) Plaintiffs contend that the mutual fund window included around two hundred Fidelity mutual funds and that the core options program included four such mutual funds. (Compl. ¶¶ 126, 159.)

Defendants respond that their decision to allow Fidelity to include its own funds as investment options is not, without more, a breach of a fiduciary duty. (Defs.' Mem. at 19.) They claim that "no inference of improper process can be drawn" from the inclusion of these particular funds in the mutual fund window. (*Id.* at 3.) Additionally, Defendants argue, more than 100 non-Fidelity funds were also available to the Plans' participants within the mutual fund window. (Defs.' Reply at 11.)

No statute or regulation explicitly prohibits a fiduciary from selecting funds from one company over another. *Hecker*, 556 F.3d 575, 586 (7th Cir. 2009). But the law also "does not provide a blanket defense for [t]rustees" who wrongly select and mismanage proprietary funds." *Feinberg v. T. Rowe Price Group, Inc.*, No. 17-cv-0427 (D. Md. August 20, 2018). In fact, the managers of retirement plans are in a position that allows them to "stuff" the plans with their own "costly investment products." *In re M&T Bank Corporation ERISA Litig.*, No. 16-cv-00375-FPG (W.D.N.Y. September 11, 2018). However, to determine if an actual breach of fiduciary duty occurred, a defendant's process for "choosing and analyzing certain funds" must be "flawed." *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1350–51 (N.D. Ga. 2017) (The plaintiffs sufficiently pled that the defendant's use of actively managed funds was imprudent because "they did

not properly analyze the funds used in the [p]lans, were forced to use certain funds provided by the recordkeepers, and the [p]lans' fiduciaries were persuaded by certain recordkeepers to use their funds without researching or choosing other funds.")

Therefore, allowing Fidelity's proprietary funds in the plan, without more, does not state a claim. To state a claim, Plaintiffs would have to additionally plead that the process for choosing and analyzing that fund was flawed. This portion of Defendants' Motion to Dismiss is therefore granted.

### B. Fidelity's Initial Inclusion and Subsequent Failure to Remove High-Cost Investment Options

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by allowing Fidelity to initially include and then fail to remove high-cost investment options within the core options and mutual fund window. Plaintiffs explain that Defendants "fail[ed] to have in place a method of systematic review" for "the portfolio as a whole" and for the Plan's "individual investment options." (Compl. ¶ 152.) Plaintiffs maintain that a "review of just the Plans' high value mutual fund options would have revealed other mutual funds available . . . with similar or better performance and lower fees." (*Id.* ¶ 164.)

Plaintiffs argue that these better investment options could be found both in other Fidelity funds and on the open market. First, Plaintiffs claim that Fidelity "offered *identical* funds in a K asset class (K-shares)," that had "expenses that were [five] to [twenty] basis points lower than the mutual funds provided." (Compl. ¶ 163.) (emphasis added). And second, Plaintiffs claim that "the Fidelity Contrafund and the Fidelity

Diversified International Fund" were included "despite the fact that every year from 2010 through 2016, those funds were significantly more expensive than *similar* but better performing market alternatives." (*Id.* ¶¶ 166, 170.) (emphasis added). Plaintiffs also assert that Defendants' mutual fund "window" was not truly a window because from 2011 to 2015 there were between 7,599 and 8,116 mutual funds available for investment in the marketplace, but Defendants only chose to open up three hundred options to Plaintiffs. (*Id.* ¶ 130.)

Defendants respond that permitting Fidelity to include and subsequently failing to remove high-cost investment options (retail funds) does not state a claim for breach of fiduciary duty. (Defs.' Mem. at 19.) Defendants contend that "[r]equiring fiduciaries to monitor every investment in a brokerage window would be" impossible. (*Id.*) As Plaintiffs admit, "sponsors lack resources to monitor every single investment in a window arrangement in the way that they do core investments." (*Id.*) Defendants also contend that they intentionally decided to place mutual funds within the window that are not in the cheapest share class to "ope[n] up the investment universe to [their] participants." (May 16, 2018 Hr'g Tr. at 43.) Moreover, they argue that Plaintiffs' allegation that specific mutual funds within the window had "lackluster returns . . . likewise fails to demonstrate imprudence." Defendants claim the important factor is that the fund "outperformed its benchmark." (*Id.*)

In *Cunningham v. Cornell University*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017), the court held that the plaintiffs failed to state a claim under Rule 12(b)(6) when they alleged a breach of fiduciary duty because the

plan's "mix and range of investment options as a whole" should have included lower-cost options. The court explained that its decision was consistent with cases from the Third, Seventh, and Ninth Circuit. *Id.* (citing *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2012) (Third Circuit), *Loomis*, 658 F.3d 667 (7th Cir. 2011) (Seventh Circuit), *Hecker*, 556 F.3d at 575 (Seventh Circuit), and *Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds by* 135 S. Ct. 1823 (2015) (Ninth Circuit)). The court in *Cunningham* found, however, that a plaintiff may state a claim that a defendant breached its fiduciary duty when it selects specific retail funds to include in a plan over identical, but lower-cost, investment options. 2017 WL 4358769, at *7. The court explained that its decision was consistent with cases from the Eighth and Ninth Circuit. *Id.* (citing *Braden*, 588 F.3d at 595–96; *Krueger*, No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *11 (D. Minn. Nov. 20, 2012) ("Plaintiffs have pointed to prudent alternatives to Ameriprise affiliated funds that Defendants could have chosen as investment options for the Plan.")).

In *Meiners v. Wells Fargo & Co.*, the Eighth Circuit held that for a plaintiff to show that a prudent fiduciary should have, at the time of selection, chosen a different fund, they "must provide a sound basis for comparison—a meaningful benchmark." 898 F.3d at 822. The court found that different shares of the *same* fund were a meaningful benchmark. *Id.* at 823 (emphasis added). But the court explained that "cheaper alternative investments with *some* similarities" that existed in the marketplace did not meet a sufficient standard of comparison. *Id.* (emphasis added). If they did, the court found, that would inappropriately expand *Braden* by allowing plaintiffs to bring a claim by simply finding a less expensive, similar alternative fund or two. *Id.*

Defendants argue that Plaintiffs nonetheless fail to state a claim citing *Loomis* and *White*. Like C*unningham*, the court in *Loomis* found that the *general offering* of retail funds within a plan was not improper. 658 F.3d at 670. The court also determined that because the plaintiffs did not plead that there was an institutional fund that was identical to, but less expensive than, a retail fund that could have been included in the offering, the plaintiffs failed to state a claim. *Id.* at 670. Similarly, in *White*, the court found that the "plaintiffs appear to be challenging the entire lineup of funds," instead of individual instances of imprudent behavior. 2016 WL 4502808, at *12. Therefore, the plaintiffs had failed to state a claim under Rule 12(b)(6).

In this case, Plaintiffs' allegations that Defendants failed to properly manage Fidelity's administration of the Plan as a whole because of the inclusion of retail funds is not sufficient to state a claim for breach of a fiduciary duty. Further, Plaintiffs' allegations that the Fidelity Contrafund and the Fidelity Diversified International Fund should not have been included because they underperformed cannot stand because Plaintiffs have only pled a market alternative that is similar, but not identical to, the Fidelity shares that were actually included in the Plan. However, Plaintiffs' claim regarding the Fidelity K asset class funds does state a claim because Plaintiffs have provided a meaningful, identical benchmark to compare against the original fund. Therefore, Defendants may have breached their fiduciary duty in allowing Fidelity to select specific Fidelity retail funds to include in the Plan over identical, but lower-cost, K asset class funds. This portion of Defendants' Motion to Dismiss is granted in part and denied in part.

### ii. Recordkeeping Fees

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by failing to properly monitor recordkeeping fees for both the core options and mutual fund window. (May 16, 2018 Hr'g Tr. at 31.) Plaintiffs contend that in 2015 alone, the Plans paid an excessive $1.65 million in recordkeeping services to Fidelity. (Compl. ¶ 228.) In addition, Plaintiffs claim that, over the course of the six years prior to filing the complaint, the Plan paid Fidelity an excess of $8 million for its recordkeeping services. (*Id.* ¶ 229.) This "imprudence," Plaintiffs contend, "can be inferred from a number of factors," including: (1) "the use of the same recordkeeper for the past [twenty-two] years . . . ; (2) no change to the "compensation arrangement since mid-2012 . . . ;" (3) the lack of any "explicit recordkeeping fee offsets within the Trust Agreement;" and (4) the failure to "engag[e] an expert or outside consultant to review the Plans' recordkeeping arrangements at any time during the Class Period." (*Id.*) Plaintiffs also argue that even if Fidelity did return " $3.4 million" in revenue credit, "[Fidelity's] fees still were excessive by $4.7 million." (Pls.' Mem. at 29.)

Defendants respond that Plaintiffs' allegations regarding their system of monitoring recordkeeping fees and failure to solicit bids from other recordkeeping services was not, without more, a breach of fiduciary duty. (Defs.' Mem. at 22.) They contend that the Plaintiffs' allegations about what an "appropriate fee would have been are speculation." (*Id.* at 24.) Moreover, they argue that fiduciaries are allowed a "wide latitude" when selecting recordkeepers. (*Id.*)

Defendants also explain that they negotiated increases to the Plans' revenue credit, totaling $4.9 million, and changed the core options to a lower fee share class in 2014. (*Id.* at 22.) In addition, they assert that their choice to charge participants with a per-participant fee instead of an asset-based fee was reasonable. (*Id.*) However, all of these contentions are fact determinations and cannot be considered on a motion to dismiss.

In *Krueger v. Ameriprise Fin., Inc.*, this Court held that the plaintiff had sufficiently stated a claim under Rule 12(b)(6) and were thus entitled to obtain discovery to uncover facts relating to the adequacy of recordkeeping fees. SRN/JSM, 2012 WL 5873825, at *22. In that case, the plaintiffs claimed that the defendants did not have a "prudent process for evaluating [their] recordkeeping services, which resulted in the [p]lan paying excessive and unreasonable fees for those services." *Id.* at *19. Although the plaintiffs did not allege facts "regarding the amount of recordkeeping fees, the services provided, or how the fees charged to the [p]lan were excessive in light of those services," this Court still found that those charges were the "types of facts that [the plaintiffs could] pursue in the course of discovery." *Id.* at *20; *see also Tussey*, 746 F.3d at 336 (When the defendant fiduciaries failed to "(1) calculate the amount the Plan was paying Fidelity for recordkeeping through revenue sharing, (2) determine whether Fidelity's pricing was competitive, (3) adequately leverage the Plan's size to reduce fees, . . . The district court's factual findings find ample support in the record, and its legal conclusion that the ABB fiduciaries breached their fiduciary duties to the Plan was not in error.").

Defendants cite to *White* to support their assertion that Plaintiffs have failed to state a claim. In *White*, the court found that the plaintiff had not even plead an "indicia" of

imprudence in regard to their recordkeeping allegations. 2016 WL 4502808, at *15. The court found that because the plaintiff alleged "no facts suggesting that the [p]lan fiduciaries could have obtained less-expensive recordkeeping services" and because the defendant had renegotiated their recordkeeping arrangement, the defendant's motion to dismiss was granted. *Id.*

Here, Plaintiffs have plausibly alleged both that Defendants could have obtained less-expensive recordkeeping services and that Defendants had not renegotiated their contract for recordkeeping with Fidelity for twenty-two years. (Compl. ¶ 229.) As such, Plaintiffs have sufficiently stated a claim that Defendants breached their fiduciary duty by improperly monitoring recordkeeping fees and failing to solicit bids from other recordkeeping services. This portion of Defendants' Motion to Dismiss is denied.

### d.     The Mutual Fund Window

Plaintiffs allege that Defendants breached their fiduciary duty of prudence in managing the mutual fund window by: (1) offering too many options, (2) allowing duplicative investments, (3) adding money market accounts, and (4) sharing revenue with non-Fidelity entities.

### i.     Too Many Options

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by placing too many investment options in the mutual fund window. Plaintiffs argue that the mutual fund window had "over [twelve] times the median number of options compared to other $1 billion 401(k) Plans." (Compl. ¶ 142.) Plaintiffs also contend that the Plan should have only contained twenty and forty investment options. (*Id.* ¶ 183.)

28

Defendants respond that their decision to offer over three hundred options within the mutual fund window is not a per se breach of fiduciary duty. (Defs.' Mem. at 2, 4.) They argue that Plaintiffs' argument is an "attack on window arrangements generally." (*Id.* at 4.) Window arrangements, they contend, are consistent with the Department of Labor's regulations and ERISA's goal of participant choice. (*Id.*)

In *Hecker v. Deere*, the court held that the plaintiff failed to state a claim for breach of fiduciary duty as to the company's retirement plan that contained a brokerage window granting access to 2,500 funds managed by a variety of companies. 556 F.3d at 581. The court reasoned that, while a plan fiduciary cannot "insulate itself from liability" by merely offering a large number of investment options, so too a plan fiduciary cannot be liable merely because of their decision to do so. *Id.* at 711; *see also Kelly v. John Hopkins*, No. CV GLR-16-2835, 2017 WL 4310229, at *1 (D. Md. Sept. 28, 2017), *reconsideration denied*, No. CV GLR-16-2835, 2018 WL 4211296 (D. Md. Aug. 14, 2018) (plaintiff's allegation that the retirement plan offered too many options did not support a breach of fiduciary duty claim); *Henderson*, 252 F. Supp. 3d at 1350 (no claim for a plan with 111 investments offered); *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *11 (S.D.N.Y. Aug. 25, 2017), *reconsideration denied*, No. 16-CV-6284 (KBF), 2017 WL 4736740 (S.D.N.Y. Oct. 19, 2017) (no claim for a plan with103 investments offered); *Sweda v. Univ. of Pennsylvania*, No. CV 16-4329, 2017 WL 4179752, at *9 (E.D. Pa. Sept. 21, 2017) (no claim for a plan with 118 investments offered). Moreover, the Eighth Circuit, in *Braden*, explained that "the far narrower range

of investment options" made it "more plausible" that the plan was "imprudently managed." 588 F.3d at 596.

Plaintiffs also claim that Defendants breached their fiduciary duty of prudence because the number of options offered through the mutual fund window reduced the Plans' ability to invest in lower-cost investment options (institutional funds) or negotiate lower fees for those investments. (Compl. ¶¶ 143, 98.) Plaintiffs argue that because the Plans' money was "spread over hundreds of options, which lowered the amount of money for each option," only the more expensive shares of the funds were available for participant purchase. (*Id.* ¶ 143.) This decision, in turn, Plaintiffs contend, benefitted Fidelity at the expense of the Plans. (*Id.*)

Defendants respond that their decision to offer over three hundred options within the mutual fund window is not, without more, a breach of fiduciary duty. (Defs.' Mem. at 2, 4.) They claim that "by their nature, these windows offer participants a multitude of options beyond a plan's core offerings" and that "[n]o window arrangements could withstand such a challenge." (*Id.* at 4; Defs.' Reply at 3.) Moreover, they argue that any participants who wanted cheaper shares could invest in the core options. (*Id.* at 20.)

In *Sacerdote v. New York University*, the court held that "nothing in ERISA requires fiduciaries to limit plan participants' investment options in order to increase the [p]lan's ability to offer a particular type of investment (such as [institutional funds])." 2017 WL 3701482, at *11. In fact, courts have "bristled" at "paternalistic" theories that suggest ERISA does not "allow participants to make their own choices." *Id.* As such, the court found that the plaintiff had failed to state a claim under Rule 12(b)(6).

Although Plaintiffs correctly cite to *Clark, et al. v. Duke University, et al.*, No. 16-cv-1044, 2017 WL 4477002 (M.D.N.C. May 11, 2017), to support their claim that there were too many mutual funds within the window, all of the courts that have reviewed this issue since *Clark* have ruled to the contrary. *See Sacerdote*, 2017 WL 3701482, at *11 (decided August 25, 2017); *Sweda*, 2017 WL 4179752, at *9 (decided September 21, 2017); *Kelly*, 2017 WL 4310229, at *1 (decided September 28, 2017).

Therefore, the Court finds that because ERISA "encourages sponsors to allow more choice to participants," Plaintiffs have failed to state a claim under Rule 12(b)(6) that Defendants breached a fiduciary duty by simply offering three hundred investment options in its mutual fund window. This portion of Defendants' Motion to Dismiss is granted.

### ii.      Duplicative Investments

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by allowing Fidelity to include duplicative investments in the mutual fund window. Plaintiffs argue that "industry best practices in 401(k) plan menu construction includes selecting one fund [and one fund only] per asset class." (Compl. ¶ 140.) Plaintiffs allege that, instead, within a category, Defendants have placed "multiples of similar style investments." (*Id.* ¶ 141.) Specifically, Plaintiffs maintain that there were twenty-six Large Cap Value funds and eight money market funds. (Pls.' Mem. at 21, 22.) Additionally, Plaintiffs claim that the duplicative funds "potentially confus[e] participants" so that decisions are made out of "fear and confusion" rather than "prudence." (Compl. ¶ 200.)

Defendants respond that their inclusion of duplicative investments within the mutual fund window is not, without more, a breach of fiduciary duty. (Defs.' Mem. at 20.) Defendants claim that "[o]ffering an expansive window will inevitably lead to duplication. Potential overlap is simply one tradeoff of offering participant choice." (*Id.*) Moreover, Defendants suggest that although Plaintiffs contend that restricting the number of options will reduce participant confusion, there is no allegation that any Plaintiff was confused. (*Id.* at 18.)

A Plan that offers duplicative funds does not hurt plan participants, "but instead provides them opportunities to choose the investments that they prefer." *Henderson*, 252 F. Supp. 3d at 1350. Potential overlap is simply one tradeoff in offering participants choice. *Sweda*, 2017 WL 4179752, at *10. While Plaintiffs allege that the mutual fund window included "duplicative funds," they do not allege that the Plans offered identical funds or different index funds that tracked the same index or had the same results. Additionally, because Plaintiffs have not alleged that any particular participant was confused by the different options, Plaintiffs have not adequately pled a claim upon which relief can be granted. This portion of Defendants' Motion to Dismiss is granted.

### iii.  Money Market Funds

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by including money market funds within the mutual fund window. Plaintiffs argue that "Defendants should have known that U.S. [short-term] interest rates based on U.S. dollar-denominated treasuries, and other short-term holdings common in money market funds, were at historically low levels." (Compl. ¶ 202.) In addition, Plaintiffs contend that, in

general, money market funds "have a negative return due to inflation and the [f]ees of these funds far outstri[p] their earnings." (*Id.*) Because of this, Plaintiffs allege that "following even three years of negative returns," a prudent fiduciary "would not [have] include[d] a money market fund in a plan." (*Id.* ¶ 205.)

Defendants respond that the inclusion of money market funds within the mutual fund window is not, without more, a breach of fiduciary duty. (Defs.' Mem. at 21.) Defendants contend that an ERISA § 404(c) plan may offer a platform consisting of "any . . . asset administratively feasible for the plan to hold." (Defs.' Reply at 11.) These plans, Defendants claim, "obviously allow providers like Fidelity to include 'any and all' of their funds." (*Id.*)

In *White*, the plaintiffs alleged that the use of a money market fund in a 401(k) plan was not justified because of the relatively modest returns received. 2016 WL 4502808, at *7. The court determined that offering a money market fund instead of a stable value fund was not a breach of fiduciary duty, "regardless of whether the latter has performed better in hindsight." *Id.* The court held that the plaintiff did not state a claim under Rule 12(b)(6) as the defendant's decision to offer a money market fund as "one of an array of mainstream investment options . . . more than satisfied [their] duty of prudence." *Id.*

Plaintiffs rely only on *Abbott v. Lockheed Martin Corporation*, 725 F.3d 803 (7th Cir. 2013), in support of their money market claim. In that case, the court stated in dicta that "most . . . jumbo 401(k) plans offer [s]table [v]alue funds" (as opposed to money market funds). *Id.* at 806. However, the holding in *Abbott* related to a renewal for class

certification under Rule 23(f), not whether the failure to offer a stable value fund stated a claim for breach of fiduciary duty. *Id.* at 805, 809. Defendants argue that the inclusion of money market funds in the mutual fund window, as compared to stable value funds, without more, does not state a claim upon which relief can be granted. The Court agrees. This portion of Defendants' Motion to Dismiss is granted.

### iv.        Revenue Sharing

Plaintiffs claim that Defendants breached their fiduciary duty of prudence by allowing Fidelity to share revenue with other non-Fidelity funds in the core options and mutual fund window. Plaintiffs argue that out of the three hundred options that were included in the mutual fund window, the 103 non-Fidelity mutual funds were only included because they "paid Fidelity for inclusion in the Plan through revenue sharing." (Compl. ¶ 126.) Plaintiffs contend this type of arrangement is a "kickback[k]" disguised "in the form of revenue sharing." (*Id.* ¶ 103.) Moreover, they allege that further discovery into the case might reveal therefore, "that the recordkeeper's total compensation exceeds reasonable levels." (*Id.* ¶ 72.)

Defendants respond that the revenue sharing scheme within the mutual fund window does not constitute a breach of a fiduciary duty. (Defs.' Mem. at 21.) Defendants argue that revenue sharing practices are "commonplace and legal." (*Id.* at 5; May 16, 2018 Hr'g Tr. at 22.)

In *Tussey*, the Eighth Circuit explained that revenue sharing schemes were "common and 'acceptable' investment industry practices that frequently inure to the

benefit of ERISA plans." 746 F.3d at 336. The Employee Benefits Security

Administration of the United States Department of Labor has opined:

> "[T]he responsible plan fiduciaries must assure that the compensation the
> plan pays directly or indirectly to [the service provider] for services is
> reasonable, taking into account the services provided to the plan as well as
> all fees or compensation received by [the service provider] in connection
> with the investment of plan assets, including any revenue sharing [to comply
> with their fiduciary duties under ERISA]."

Employee Benefits Security Administration of the U.S. Department of Labor, Advisory

Opinion 2013–03A (July 3, 2013).

The Eighth Circuit has held that a plaintiff bears the "burden of pleading facts

showing that the revenue sharing payments were unreasonable in proportion to the

services rendered." *Braden*, 588 F.3d at 601. The court further held that revenue sharing

payments may not be reasonable compensation for services rendered but may instead be

kickbacks in exchange for inclusion of certain funds in a plan. *Id.* at 590. If so pled, the

allegation is a sufficient assertion of breach of fiduciary duty to survive a motion to

dismiss for failure to state a claim under Rule 12(b)(6). *Id.* The plaintiff in *Braden*

alleged that the trustee, Merrill Lynch, was receiving revenue sharing payments as part of

a quid pro quo deal to include funds in the plan, ultimately "corrupt[ing] the fund

selection process." *Id.* at 599. The court found that "the facts alleged" were sufficient to

shift the burden to appellees to show that "no more than reasonable compensation [was]

paid" for Merrill Lynch's services. *Id.* at 601.

Like *Braden*, Plaintiffs in this case have adequately pled that the revenue sharing

scheme here operated as a kickback to Fidelity. (Compl. ¶ 103.) They also pled that the

consequence of this revenue sharing was the payment to Fidelity of unreasonable compensation. (*Id.* ¶ 103.) Although Defendants contend that a rebate program was in place that "reduced the [P]lans' recordkeeping expenses to the amount Plaintiffs [argue] should have been paid," that is a factual question not properly considered at this stage of the proceedings. (Defs.' Mem. at 5.) Plaintiffs have sufficiently pled a breach of fiduciary duty with respect to revenue sharing to survive a motion to dismiss. This portion of Defendants' Motion to Dismiss is denied.

### 2. Breach of Fiduciary Duty of Loyalty

The duty of loyalty requires fiduciaries to act "for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). "Perhaps the most fundamental duty of a [fiduciary] is that he must display . . . complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Pegram*, 530 U.S. at 224 (quotation marks and citations omitted).

Under ERISA, a corporate officer serving as a fiduciary must "wear only one hat at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram,* 530 U.S. at 225; *DiFelice*, 497 F.3d at 419. Fiduciaries must "avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan." *Donovan v. Biewirth,* 680 F.2d at 271. However, "an act which has the effect of furthering the interests of a third party is fundamentally different from an act

taken with that as a goal." *Sacerdote*, 2017 WL 3701482, at *5. While the former "may well not be a violation of the duty of loyalty, . . . the latter may well be." *Id.*

Although Plaintiffs explain that "duties of loyalty and prudence may be considered together," *Morin v. Essentia Health*, No. 16-CV-4397 (RHK/LIB), 2017 WL 4083133, at *9 (D. Minn. Sept. 14, 2017), *report and recommendation adopted*, No. CV 16-4397 (RHK/LIB), 2017 WL 4876281 (D. Minn. Oct. 27, 2017), duty of prudence and duty of loyalty claims may also be analyzed independently. (Pls.' Mem. at 31.); *Tussey*, 746 F.3d at 340; *In Re Target Securities Litigation*, 275 F. Supp. 3d 1063, 1083, 1089 (D. Minn. 2017), *reconsideration denied*, No. 16-CV-1315 (JNE/BRT), 2018 WL 1378755 (D. Minn. Mar. 19, 2018). And courts will dismiss a duty of loyalty claim if it is not adequately pled, even if permitting a duty of prudence claim to proceed. In *Romero v. Nokia, Inc.*, No. C 12-6260 PJH, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013), the court dismissed plaintiff's breach of duty of loyalty claim but allowed the duty of prudence claims to stand. The court reasoned that when a duty of loyalty claim, "hinges entirely on the prudence-based allegations" and the plaintiff does not "present any separate allegations regarding any loyalty breach," the plaintiff has not alleged sufficient facts to survive a motion to dismiss under Rule 12(b)(6). *Id.*

In this case, all of Plaintiffs' claims alleging Defendants' breach of the duty of loyalty are identical to their breach of the duty of prudence claims. Importantly, Plaintiffs have pled no facts showing that Defendants took an act to benefit themselves or Fidelity with that benefit as the goal. As such, Plaintiffs fail to sufficiently plead a breach of

fiduciary duty of loyalty in this case. This portion of Defendants' Motion to Dismiss is granted.

> **E.      Count II: Breach of Fiduciary Duties to Monitor and Co-Fiduciary Liability**

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by failing to monitor the Plans' other fiduciaries. Plaintiffs argue that Defendants failed to "adequately monitor other persons to whom they had delegated the management and administration of the Plans' assets, despite the fact that such Defendants knew or should have known that such other fiduciaries were failing to manage the Plans and their investment portfolios in a prudent and loyal manner as required by ERISA." (Compl. ¶ 10.) Specifically, Plaintiffs assert that, in addition to the previous breach of fiduciary duty claims, Defendants also failed to remove the fiduciaries who had maintained the imprudent funds and included ProManage's services on an opt-out rather than opt-in basis. (*Id.* ¶ 264.)

Defendants respond that the Plaintiffs cannot state a claim for failure to monitor. (Defs.' Mem. at 29.) Defendants first contend that the monitoring claim is derivative of the Plaintiffs' claims in Count I (breach of the duties of prudence and loyalty). (*Id.*) However, Defendants also assert that Plaintiffs have failed to allege facts showing that the monitoring fiduciaries "were aware of any information triggering a duty to remove fiduciaries." (*Id.*)

"At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to

ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75–8 at FR–17. Furthermore, under ERISA, appointing fiduciaries "cannot escape liability by passing the buck to another person and then turning a blind eye." *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011).

It is true that "[p]laintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA." *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d at 1093 (citing *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1067 (2017)). As Plaintiffs have plausibly pled that Defendants breached some of their fiduciary duties, the same breach of the duty to monitor claims also survive. *Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017).

Plaintiffs also allege that Defendants "breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the self-interest of Fidelity in retaining excessively expensive and poorly performing proprietary fund investment options. Defendants had or should have had knowledge of such breaches by other Plan fiduciaries, yet made no effort to remedy them." (Compl. ¶¶ 254, 263.)

Defendants respond that Plaintiffs cannot state a claim for co-fiduciary liability. (Defs.' Mem. at 29.) Defendants first contend that the co-fiduciary claim is derivative of the Plaintiffs' claims in Count I (breach of the duties of prudence and loyalty). (*Id.*) Moreover, they contend that Plaintiffs have failed to allege "any actions by Defendants

that indicate knowing participation in or enabling of another fiduciary's supposed breach." (*Id.*)

Under ERISA, a plan fiduciary is liable for another's fiduciary breach with respect to the same plan:

> "(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) . . . in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

29 U.S.C. § 1105(a).

Similar to the duty to monitor claim, a "claim of co-fiduciary liability . . . must co-exist with *some* breach by a fiduciary of their duties under ERISA." *Krueger*, 2012 WL 5873825, at *19 (quoting *Crocker v. KV Pharm. Co.*, 782 F. Supp. 2d 760, 788 (E.D. Mo. 2010) (original emphasis)). Thus, the same co-fiduciary liability claims survive to the extent that Plaintiffs have plausibly pled that Defendants breached their fiduciary duties. Therefore, this part of Defendants' Motion to Dismiss is denied.

## F.    Count III: Breach of Fiduciary Duties to Provide Adequate Disclosures

Plaintiffs allege that "Defendants did not provide adequate disclosures to participants in the Plans regarding the fees and expenses charged to them by third-party providers by: [(1) f]ailing to properly identify fees and expenses charged against individual accounts and [(2) f]ailing to properly identify the source of the fees and expenses so charged." (Compl. ¶ 11.) Specifically, Plaintiffs allege that two fee disclosures were improper. First, they allege that "each investment in both Plans was

charged something simply identified as 'Fees' on a quarterly basis." (*Id.* ¶ 234.) Second,

one of the Plaintiffs, Larson, was "charged an 'Investment Adv. Fee' on a monthly basis

for each investment in both of the Plans." (*Id.* ¶ 233.) Plaintiffs claim that the vagueness

of the identity of those two fees "denied Plaintiffs the full information necessary to assess

the reasonableness of various fees charged to their individual accounts." (Pls.' Mem. at

38.)

Defendants respond that Plaintiffs cannot state a claim for failure to provide

complete and accurate disclosures to plan participants. (Defs.' Mem. at 27.) Defendants

argue that regulations "require disclosure of only one of the four categories of

information that Plaintiffs claim were not disclosed in their quarterly statements." (*Id.*)

Beyond that, Defendants maintain that they had no duty under any regulation to disclose

"how investment fees could be avoided, how ProManage was selected, or to whom the

fees were paid." (*Id.* at 28.) Moreover, Defendants explain that, in regard to the

"Investment Adv. Fees," the revenue credit under the plan was disclosed and the

statement explained the basis of the credit. (*Id.* at 27.)

Under 29 C.F.R. § 2550.404a–5:

 "[The plan administrator] must take steps to ensure  . . . that such
participants and beneficiaries, on a regular and periodic basis, are made
aware of their rights and responsibilities with respect to the investment of
assets held in, or contributed to, their accounts and are provided sufficient
information regarding the plan, including fees and expenses attendant
thereto, to make informed decisions with regard to the management of their
individual accounts."

The information provided in such disclosures must be "complete and accurate." *Id.* In

addition, the plan administrator must provide to each plan participant "an explanation of

any fees and expenses for general plan administrative services (e.g., legal, accounting, recordkeeping), which may be charged against the individual accounts of participants and beneficiaries . . . ." *Id.* at § 2550.404a–5(c)(2)(i)(A).

An ERISA fiduciary "has no duty to disclose to plan participants information additional to that required by ERISA." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 99, 102 (2d Cir. 2005). And "given the extent of ERISA's specific disclosure requirements, the Eighth Circuit is 'not quick to infer [additional] duties of disclosure under § 1104 . . . .'" *Wright v. Medtronic, Inc.*, 2011 WL 31501, at *6 (D. Minn. Jan. 5, 2011).

In *Hecker*, the court held that there was no obligation for a defendant to reveal the source of the fees to comply with ERISA disclosure requirements. 556 F.3d at 580. The court noted that because "there were proposals to amend the regulations so that revenue sharing arrangements would be disclosed . . . it is apparent that the present rules imposed no such obligation." *Id.* (citing Proposed Rules, Department of Labor, Employee Benefits Security Administration, 71 Fed. Reg. 41,392, 41,394 (July 21, 2006)). As neither of Defendants' disclosures required them to reveal the source of the fees, neither are improper disclosures in this regard.

Accordingly, the Court agrees that Plaintiffs have sufficiently pled that Defendants' description of the expenses related to the Plan as "Fees," was not sufficient to satisfy the explanation requirements of § 2550.404a–5(c)(2)(i)(A). However, under Rule 12(b)(6), Plaintiffs have failed to plead that Defendants' description of the expenses related to the Plan as "Investment Adv. Fee" was insufficient to comply with ERISA

disclosure requirements because Defendants did provide a brief explanation of the fee that was charged to plan participants. Therefore, Defendants' motion to dismiss Plaintiffs' claim regarding Defendants' failure to provide complete and accurate disclosures is granted as to the "Investment Adv. Fee" disclosure and denied as to the "Fees" disclosure.

## IV.   ORDER

    a.   Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as set forth in this Order.


Dated: October 1, 2018

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge
